**Not for Publication**

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

**FRANKLIN PRATHER,**

           **Petitioner,**

     **v.**

**THE ATTORNEY GENERAL OF THE**
**STATE OF NEW JERSEY,**

           **Respondent.**

**Civil Action No.: 18-16199 (ES)**

**OPINION**

**SALAS, DISTRICT JUDGE**

Petitioner Franklin Prather, an individual currently confined at East Jersey State Prison in Rahway, New Jersey, filed the instant petition for a writ of habeas corpus *pro se* pursuant to 28 U.S.C. § 2254.  (D.E. No. 3 ("Am. Pet.")).  Following an order to answer, respondent Attorney General for the State of New Jersey opposed the Petition (D.E. No. 11 ("Opp.")), and Petitioner subsequently replied (D.E. No. 16 ("Reply")).  Having considered the parties' submissions, the Court decides this matter without oral argument.  *See* Fed. R. Civ. P. 78(b); L. Civ. R. 78.1(b). For the reasons expressed below, the Court DENIES the Petition and DENIES a certificate of appealability.

**I.**     **BACKGROUND**

In the late evening hours of July 3, 2006, the lifeless body of Paul Capers, Sr. was found in his basement apartment in Union Township, New Jersey.  *State v. Prather*, No. A-3221-08T4, 2013 WL 1942874, at *1 (N.J. Super. Ct. App. Div. May 13, 2013).  He had been shot once in the chest.  *Id.*  A grand jury charged Petitioner and his neighborhood friend, Maurice Knighton, with

murder, robbery, and other related crimes.  (D.E. No. 11-7 at 66–68, Indictment).[1]

On the Sunday before trial began, a local newspaper published an article about the case. *Prather*, 2013 WL 1942874, at *4.  Several jurors acknowledged having seen something in the media about the case.  *Id.*  Subsequently, the trial judge interviewed each juror, and, with the agreement of counsel, excused one juror who had told another that the case was "open and shut." *Id.*  Defense counsel moved for a mistrial, arguing that the excused juror's comments tainted the entire jury, but the trial judge denied the motion.  *Id.*  The matter proceeded to trial.  *Id.*

The New Jersey Superior Court, Appellate Division provided the following summary of facts and evidence presented at trial:[2]

> Defendant's co-defendant, Maurice Knighton, pled guilty and was a key witness at trial.  Knighton claimed defendant supplied the murder weapon, a gun which defendant kept at his father's house.  Before the murder, defendant and Knighton went to a CVS store and purchased duct tape, to bind the victim, and stockings to use as masks.  The jury saw CVS surveillance tapes which, along with testimony and store records, timed the purchases and corroborated Knighton's testimony.
>
> Defendant's cousin testified and corroborated the purchase of the stockings.  He also confirmed that defendant obtained a gun from his father's home before the murder, and that shortly after the shooting, defendant and Knighton came to a house frequented by drug users.  Defendant was nervous and sweating; Knighton had blood on his shirt.
>
> Defendant's father, Franklin Prather, Sr. (Franklin Sr.), was an important State's witness[.]  Franklin Sr. reluctantly testified against his son.  He had previously seen two guns in the garage of the property . . . that his family owned and from which he was vacating during the weeks leading up to July 3, 2006.  He knew defendant

---

[1]    For pin cites to Docket Entry Numbers 11-7 and 16, the Court relies on the pagination automatically generated by the CM/ECF.

[2]    Pursuant to 28 U.S.C. § 2254(e)(1), "[i]n a proceeding instituted by an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court, a determination of a factual issue made by a State court shall be presumed to be correct.  The applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence."

"had a weapon."  One of the guns Franklin Sr. saw was a revolver, but it was smaller than his own .357 Magnum revolver.

Defendant called him several nights in a row immediately before the murder, asking about things that Franklin Sr. had moved from the house . . . .  Defendant asked for his gun and bullets.  On Friday or Saturday before the murder, defendant called Franklin Sr., angry because he could not find some of the things he wanted.  That night, Franklin Sr. gave defendant some brown bags and some boxes taken from [the] house.  Although he had previously admitted to detectives that he knew defendant's gun was in one of the brown bags, Franklin Sr. testified at trial that he was not sure.

Union Township Detective William Fuentes took statements from defendant, his father, his cousin and Knighton.  The judge denied defendant's motion to suppress his statements, and, although defendant never admitted his involvement, the State introduced the statements and argued they were inconsistent with other evidence.

*State v. Prather*, No. A-3631-14T3, 2018 WL 987864, at *1 (N.J. Super. Ct. App. Div. Feb. 21, 2018).

The jury found Petitioner guilty of first-degree robbery in violation of N.J.S.A. § 2C:15-1, felony murder in violation of N.J.S.A. § 2C:11-3a(3), third-degree unlawful possession of a handgun in violation of N.J.S.A. § 2C:39-5b, and second-degree possession of a handgun for an unlawful purpose in violation of N.J.S.A. § 2C:30-4a.  (D.E. No. 11-7 at 69–70, Verdict Sheet).  The judge sentenced Petitioner to an aggregate forty-year term of imprisonment, with an eighty-five percent period of parole ineligibility pursuant to the No Early Release Act ("NERA"), N.J.S.A. § 2C:43-7.2.  (D.E. No. 11-7 at 71–72, Judgment of Conviction).

Petitioner appealed his conviction.  (D.E. No. 11-7 at 73–74, Notice of Appeal).  Among other things, he argued that the trial court violated his Sixth and Fourteenth Amendment rights by precluding defense counsel from cross-examining Maurice Knighton regarding his status as a suspect in an unrelated Florida homicide.  (D.E. No. 16 at 40–121 ("Direct Appeal Br.")).  He also contended that the trial court erred in failing to declare a mistrial after several of the jurors admitted

to seeing and hearing about the allegedly prejudicial, extraneous news article. (*Id.*). On May 13, 2013, the Appellate Division denied these claims and affirmed Petitioner's conviction. *Prather*, 2013 WL 1942874, at *13. The New Jersey Supreme Court summarily denied Petitioner's petition for certification on December 16, 2013. *See State v. Prather*, 82 A.3d 939 (N.J. 2013).

On January 10, 2014, Petitioner filed a petition for post-conviction relief ("PCR"). (D.E. No. 11-7 ("PCR Pet.") at 112–18). Among other things, Petitioner asserted that his trial counsel was ineffective for failing to present statements from witnesses D.W. and J.B.[3] and for coercing Petitioner to refrain from testifying. (*See* D.E. No. 11-7 at 160–88, *Pro se* Br. in Supp. of PCR Pet.). The PCR trial court denied the claims on February 3, 2015 (D.E. No. 11-7 at 119–38, Op. Den. PCR Pet.), and the Appellate Division affirmed on February 21, 2018. *Prather*, 2018 WL 987864, at *1. Petitioner filed a petition for certification (D.E. No. 11-10, Br. in Supp. of Pet. for Certification), which the New Jersey Supreme Court summarily denied on September 12, 2018. *State v. Prather*, 191 A.3d 1275, 1276 (N.J. 2018).

On January 14, 2018, Petitioner filed a petition for habeas corpus in this Court. (D.E. No. 1, Petition). Petitioner subsequently amended his habeas petition (*see* Am. Pet.), raising the following grounds for relief:

> Ground One: Denial of confrontation and cross-examination [of State witness, Maurice Knighton], based on Petitioner's inability to use [Knighton's] pending murder investigation for impeachment purposes.
>
> Ground Two: Denial of [a] fair trial [by an] impartial jury, based on [the] jury's exposure to extraneous prejudicial information.
>
> Ground Three: Ineffective assistance of counsel[] based on trial counsel's failure to present testimony from [witnesses] D.W. and J.B.

---

[3]    The Court uses initials to protect the identity of the witnesses.

4

Ground Four: Ineffective assistance of counsel[] based on trial counsel's deficient consultation causing Petitioner to refrain from testifying.

(Am. Pet. at 6–11).  On April 24, 2019, Respondents submitted a response in opposition to the petition.  (*See* Opp.).  Petitioner filed a reply on June 6, 2019.  (*See* Reply).

## II.    STANDARDS OF REVIEW

Under the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), 28 U.S.C. § 2254, a district court "shall entertain an application for writ of habeas corpus [o]n behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States."  Habeas petitioners bear the burden of establishing their entitlement to relief for each claim presented in a petition based upon the record that was before the state court.  *See Eley v. Erickson*, 712 F.3d 837, 846 (3d Cir. 2013); *see also Parker v. Matthews*, 567 U.S. 37, 41 (2012).  District courts are required to give great deference to the determinations of the state trial and appellate courts.  *Renico v. Lett*, 559 U.S. 766, 772–73 (2010).  Specifically, district courts must defer to the "last reasoned decision of the state courts on the petitioner's claims."  *Simmons v. Beard*, 590 F.3d 223, 231–32 (3d Cir. 2009) (internal quotation marks omitted).  Moreover, a federal court reviewing the state court's adjudication under § 2254(d)(1) must confine its examination to evidence in the record.  *Cullen v. Pinholster*, 563 U.S. 170, 181–82 (2011).

Where a claim has been adjudicated on the merits by the state courts, the district court shall not grant an application for writ of habeas corpus unless the state court adjudication:

(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States: or

(2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

"Contrary to clearly established Federal law" means the state court applied a rule that contradicted the governing law set forth in United States Supreme Court precedent or that the state court confronted a set of facts that were materially indistinguishable from United States Supreme Court precedent and arrived at a different result than the Supreme Court. *Eley*, 712 F.3d at 846 (citing *Williams v. Taylor*, 529 U.S. 362, 405–06 (2000)). "'[C]learly established Federal law' for purposes of § 2254(d)(1) includes only the holdings, as opposed to the dicta, of [the United States Supreme] Court's decisions." *See Woods v. Donald*, 575 U.S. 312, 316 (2015). An "unreasonable application" of clearly established federal law is an "objectively unreasonable" application of law, not merely an erroneous application. *Eley*, 712 F.3d at 846 (quoting *Renico*, 559 U.S. at 773).

"When reviewing state criminal convictions on collateral review, federal judges are required to afford state courts due respect by overturning their decisions only when there could be no reasonable dispute that they were wrong." *Woods*, 575 U.S. at 316. Where a petitioner challenges an allegedly erroneous factual determination of the state courts, "a determination of a factual issue made by a State court shall be presumed to be correct [and t]he applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence. 28 U.S.C. § 2254(e)(1). Furthermore, "[w]hen a state court arrives at a factual finding based on credibility determinations, the habeas court must determine whether that credibility determination was unreasonable." *See Keith v. Pennsylvania*, 484 F. App'x 694, 697 (3d Cir. 2012) (citing *Rice v. Collins*, 546 U.S. 333, 339 (2006)).

## III.    DISCUSSION

### A.    Ground One: Confrontation Claim

In ground one, Petitioner alleges that the trial court violated Petitioner's right to confront and cross-examine co-defendant Maurice Knighton regarding a pending murder investigation in Florida.  (Am. Pet. at 6).  According to Petitioner, Knighton's status as a suspect in the pending murder investigation motivated him to falsely incriminate Petitioner to curry favorable treatment from the Florida authorities, and, therefore, the trial court should have allowed him to impeach Knighton's credibility by questioning him about the murder investigation.  (*See id.*).

The Sixth Amendment guarantees a defendant the right "to be confronted with the witnesses against him."  U.S. Const. amend. VI.  This includes the defendant's right to test the credibility of witnesses through cross-examination.  *Davis v. Alaska*, 415 U.S. 308, 315–16 (1974) ("The main and essential purpose of confrontation is to secure for the opponent the opportunity of cross-examination . . . which is the principal means by which the believability of a witness and the truth of his testimony are tested.").

This right, however, is not unlimited.  The Constitution does not bar the exclusion of evidence through the application of state evidentiary rules that serve the interests of fairness and reliability.  *Chambers v. Mississippi*, 410 U.S. 284, 302 (1973).  Thus, "trial judges retain wide latitude insofar as the Confrontation Clause is concerned to impose reasonable limits on [] cross-examination based on concerns about, among other things, harassment, prejudice, confusion of the issues, the witness' safety, or interrogation that is repetitive or only marginally relevant." *Delaware v. Van Arsdall*, 475 U.S. 673, 679 (1986); *see Davis*, 415 U.S. at 316 (explaining that the right to cross-examination is "[s]ubject always to the broad discretion of a trial judge to preclude repetitive and unduly harassing interrogation").

With these principles in mind, the Court proceeds to analyze this claim pursuant to the AEDPA. As the New Jersey Supreme Court summarily denied this claim on direct appeal, *see Prather*, 82 A.3d at 939, this Court "look[s] through" the summary denial and applies the AEDPA's standards to the Appellate Division's determination. *See Simmons*, 590 F.3d at 231–32.

The Appellate Division rejected this claim on direct appeal. *See Prather*, 2013 WL 1942874, at *8–9. It acknowledged that cross examination is an essential element of an accused's right to confront witnesses, but it noted that the trial court may limit cross-examination that would result in prejudice, confusion of the issues, or irrelevancy. *Id.* at *8. Because the Appellate Division agreed with the trial court's determination that there was no evidence Knighton implicated Petitioner in return for favorable treatment in an unrelated Florida investigation, the Appellate Division concluded that the trial judge properly excluded the proffered cross-examination as irrelevant, purely speculative, prejudicial, and confusing to the jury pursuant to N.J.R.E. 403.[4] *Id.* at *9.

Petitioner argues that the Appellate Division's decision "ran afoul of AEDPA's 'contrary to' clause" because the Appellate Division "failed to cite any federal cases," including *Davis*. (*See* Reply at 28). However, the AEDPA does not require that state courts cite Supreme Court cases or even that state courts be aware of them, so long as neither the reasoning nor the result of the state-court decision contradicts those cases. *Early v. Packer*, 537 U.S. 3, 8 (2002).

Petitioner fails to demonstrate that the Appellate Division's reasoning or result contradicts or misapplies *Davis*, or other relevant Supreme Court holdings. The Appellate Division's

---

[4]        Rule 403 provides: "[e]xcept as otherwise provided by these rules or other law, relevant evidence may be excluded if its probative value is substantially outweighed by the risk of: (a) [u]ndue prejudice, confusion of issues, or misleading the jury; or (b) [u]ndue delay, waste of time, or needless presentation of cumulative evidence." N.J.R.E. 403.

conclusion that the trial judge properly excluded the proffered cross-examination pursuant to N.J.R.E. 403 is consistent with federal caselaw affording trial judges broad discretion in imposing reasonable limits on such testimony.  *See Van Arsdall*, 475 U.S. at 679; *Davis*, 415 U.S. at 316; *Chambers*, 410 U.S. at 302.  Accordingly, the Appellate Division's decision is not contrary to, or an unreasonable application of, clearly established federal law, and Petitioner is not entitled to habeas relief on this ground.  *See* 28 U.S.C. § 2254(d)(1).

### B.      Ground Two: Juror Bias Claim

In ground two, Petitioner alleges that the trial court violated his right to an impartial jury under the Sixth and Fourteenth Amendment[5] by refusing to declare a mistrial or dismiss certain jurors after they admitted to seeing extraneous news reports regarding Petitioner's criminal matter prior to trial.  (Am. Pet. at 8).  Specifically, Petitioner maintains that the trial court should have at least dismissed jurors Mr. B., Mr. G., Ms. G., and Ms. O.[6]  (*Id.*).

The facts related to Petitioner's claim are generally undisputed.  On the Sunday before trial began, a local newspaper published an article about the case.  *See Prather*, 2013 WL 1942874, at *4.  After the trial court impaneled the jury but before the court swore in the jury, the judge, at the request of defense counsel, asked if any juror had "seen anything in the media . . . about this case since you were last in Court?"  *Id.*  Several of the jurors responded affirmatively.  *See id.*  As a result, the Court interviewed those jurors individually.  *Id.*

Three jurors, including Ms. G., indicated that they started reading the headline or beginning of the article, realized it was about Petitioner, and stopped reading.  (D.E. No. 11-13 ("Oct. 8 Tr. Transcript") at 15:12–18).  One juror, Mr. J., indicated that he had read an article about the case

---

[5]      The Sixth and Fourteenth Amendment to the United States Constitution guarantee a criminal defendant's right to be tried by an impartial jury.  *See Morgan v. Illinois*, 504 U.S. 719, 728 (1992).

[6]      The Court uses initials to protect the identity of the jurors.

about seven or eight weeks prior and another article about two years prior.  (*Id.* at 20:5–21:20).

Mr. J. also indicated that he told other jurors that he read something about the trial.  (*Id.* at 31:8–

32:4).

 After Mr. J.'s comments, and at defense counsel's request, the trial judge proceeded to

interview all jurors.  *See Prather*, 2013 WL 1942874, at \*4.  Three of the jurors, Mr. G., Ms. O.,

and Ms. M., indicated that they had heard Mr. J. say that he had read something about this case.

(*See* Oct. 8 Tr. Transcript at 36:20–37:22, 39:3–17 & 60:11–24).  Another juror, Mr. B., indicated

that Mr. J. said that he thought this was an "open and shut case."  (*Id.* at 46:16–21).  All indicated

that they could remain fair and impartial.  *See Prather*, 2013 WL 1942874, at \*4.  The trial judge

removed Mr. J., but defense counsel insisted that the trial judge strike the whole jury or declare a

mistrial.  *Id.*  The trial judge declined, finding that, other than Mr. J., "they were all very candid,

and honest, and went out of their way to be so."  *Id.*

 Petitioner raised this claim on direct appeal.  (*See* Direct Appeal Br.).  The Appellate

Division analyzed it as follows:

> Because the judge interviewed all the jurors and made factual
> findings thereafter, our review is limited.  *See State v. Wakefield*,
> 190 N.J. 397, 495, 921 A.2d 954 (2007) (holding in similar
> circumstances that "[t]he aim . . . is . . . to determine whether the
> findings made could reasonably have been reached on sufficient
> credible evidence present in the record") (quoting *State v. Johnson*,
> 42 N.J. 146, 162, 199 A.2d 809 (1964)).  In addressing the nature,
> extent and impact of a juror's exposure to extraneous information,
>
>> [t]he court is obliged to interrogate
>> the juror, in the presence of counsel,
>> to determine if there is a taint; if so,
>> the inquiry must expand to determine
>> whether any other jurors have been
>> tainted thereby. The trial court must
>> then determine whether the trial may
>> proceed after excusing the tainted
>> juror or jurors, or whether a mistrial is

necessary.

> [*State v. R.D.*, 169 N.J. 551, 558, 781
> A.2d 37 (2001) (citations omitted).]

> *See also Wakefield, supra*, 190 N.J. at 496 (extending this procedure "to allegations of taint in the pre-trial jury selection process"). Ultimately, "the overarching relevant inquiry is not whether the trial court committed error, but whether it abused its discretion." *Ibid.* (citation omitted).

> Here, the judge followed the procedure dictated by the Court in *R.D., supra*. He extensively interviewed each juror, excused one and concluded the remaining jurors had not been tainted by the news story or the removed juror's remarks. We find no mistaken exercise of the judge's discretion in denying defendant's motion to strike the panel and declare a mistrial.

*Prather*, 2013 WL 1942874, at *4–5.

As Petitioner concedes, the Appellate Division's decision constitutes the last reasoned decision as to ground two. (*See* Reply at 29). Accordingly, the Court applies the AEDPA's standards to that decision. *See Simmons*, 590 F.3d at 231–32.

Petitioner asserts that the Appellate Division's decision is contrary to clearly established federal law because the Appellate Division "failed to cite any federal cases in analyzing Petitioner's juror-bias issue," including *Irvin v. Dowd*, 366 U.S. 717 (1961), which Petitioner contends sets forth the standard governing his jury-bias claim. (Reply at 30). As noted above, however, the AEDPA does not require that state courts cite Supreme Court cases or even that state courts be aware of them, so long as neither the reasoning nor the result of the state-court decision contradicts those cases. *Early*, 537 U.S. at 8.

Petitioner also contends that, in *Irvin*, "the Supreme Court held that the presumption of [juror] impartiality can be overcome in certain circumstances" depending on certain factors, including "the nature and strength of the opinion formed" and "the jury's exposure to extraneous prejudicial information from local media reports." (Reply at 30). According to Petitioner, the

11

state courts should have determined that the presumption of impartiality was overcome because at least five jurors were exposed to the news article or Mr. J.'s comments.  (*See id.*).  The Court construes Petitioner's argument as asserting that the Appellate Division's decision was an unreasonable application of *Irvin* because, in light of the jurors' exposure to pretrial publicity, either directly or through Mr. J.'s comments, the trial court should have put aside the jurors' assertions of impartiality and "presumed prejudice."[7]

A bit of context is necessary to address Petitioner's argument.  In *Irvin*, six murders were committed in Vanderburgh County, Indiana over the span of four months, which the media highly publicized.  *Irvin*, 366 U.S. at 719.  Thereafter, a Vanderburgh County grand jury indicted Irvin for murder.  *Id.* at 720.  Counsel appointed to defend Irvin immediately sought a change of venue from Vanderburgh County, which the trial court granted, transferring the case to the adjoining Gibson County.  *Id.*

Alleging that the widespread and inflammatory publicity had also highly prejudiced the inhabitants of Gibson County against Irvin, defense counsel moved for another change of venue, for a continuance, and to remove certain prospective jurors who indicated that they had preconceived notions of Irvin's guilt.  *Id.*  To demonstrate the extent of the publicity, the Supreme Court noted that:

---

[7]    To the extent that Petitioner instead argues that the trial court should have found actual prejudice, Petitioner's claim fails under the AEDPA's deferential standard.  The Appellate Division properly deferred to the trial court's findings with respect to the credibility of the jurors' assertions of impartiality and the extent of their exposure to extraneous information.  *See Skilling v. United States*, 561 U.S. 358, 396 (2010) (noting that, in reviewing actual juror prejudice claims, "the deference due to [trial] courts is at its pinnacle").  Thus, the Appellate Division's decision was not contrary to, or an unreasonable application of, clearly established federal law.  *See* 28 U.S.C. § 2254(d)(1).  Moreover, to the extent Petitioner argues that the state court decisions were based on an unreasonable determination of fact, Petitioner fails to rebut by clear and convincing evidence the trial court's finding that the extent of the jurors' exposure to extraneous information was limited and that the jurors had not been tainted by the news story or Mr. J.'s remarks.  *See* 28 U.S.C. § 2254(e)(1).  Such a finding was reasonable because the remaining jurors indicated that they stopped reading the news article when they realized it was about Petitioner, only one juror had heard Mr. J.'s remark that the case was "open and shut," and all indicated that they could nonetheless remain impartial.  Thus, the Appellate Division's determination was not based on an unreasonable determination of the facts.  *See* 28 U.S.C. § 2254(d)(2).

> [Irvin's] first motion for a change of venue from Gibson County
> alleged that the awaited trial . . . had become the *cause celebre* of
> this small community -- so much so that curbstone opinions, not
> only as to [Irvin's] guilt but even as to what punishment he should
> receive, were solicited and recorded on the public streets by a roving
> reporter, and later were broadcast over the local stations.  A reading
> of the 46 exhibits which [Irvin] attached to his motion indicate[d]
> that a barrage of newspaper headlines, articles, cartoons and pictures
> was unleashed against him during the six or seven months preceding
> his trial.  The motion further alleged that the newspapers in which
> the stories appeared were delivered regularly to approximately 95%
> of the dwellings in Gibson County and that, in addition, the
> Evansville Radio and TV stations, which likewise blanketed that
> county, also carried extensive newscasts covering the same
> incidents.

*Id.* at 725.  Moreover, the Supreme Court explained that the *voir dire* examination of the jurors

ultimately placed in the jury box further reflected the "pattern of deep and bitter prejudice" within

the community:

> Two-thirds of the jurors had an opinion that [Irvin] was guilty and
> were familiar with the materials and circumstances involved,
> including the fact that other murders were attributed to him, some
> going so far as to say that it would take evidence to overcome their
> belief.  One said that he "could not . . . give [Irvin] the benefit of the
> doubt that he is innocent."  Another stated that he had a "somewhat"
> certain fixed opinion as to [Irvin's] guilt.

*Id.* at 727–28.

Nonetheless, the trial court denied these motions because an Indiana statute permitted only

one change of venue, the jurors indicated that they could nonetheless render an impartial verdict

upon the law and evidence, and the trial court found those assertions to be credible.  *Id.* at 720,

728.  The jury ultimately convicted Irvin of murder.  *See id.* at 728.

Irvin appealed his judgment of conviction.  *Id.* at 718.  After direct appeals were

unsuccessful, he filed a petition for habeas corpus, and the Supreme Court eventually granted

certiorari.  *Id.* at 718–19.  The Supreme Court held that the widespread and inflammatory pretrial

publicity in connection with his capital trial had so tainted the jury pool in Gibson County, Indiana that the trial court's denial of Irvin's juror challenges and other related motions violated his right to an impartial jury as a matter of law and notwithstanding the jurors' assurances of impartiality. *See id.* at 728.  As a result, the Supreme Court vacated the judgments of the lower courts denying habeas relief and remanded to the district court with instructions to enter such orders as to allow the state court reasonable time to retry Irvin.  *Id.* at 728–29.

Later, in *Skilling*, the Supreme Court discussed *Irvin* and clarified the circumstances upon which a court must set aside jurors' assurances of impartiality and "presume prejudice" when assessing whether juror bias from pretrial publicity violated a defendant's right to trial by an impartial jury.  561 U.S. at 378–85.  The Supreme Court identified four factors relevant to the inquiry: (i) the size and characteristics of the community; (ii) the nature of the publicity; (iii) the time between the media attention and the trial; and (iv) whether the jury's decision indicated bias. *See id.*

The circumstances in the instant case are nothing like those in *Irvin* and did not require the trial court to presume prejudice.  Although a local newspaper published an article just days before Petitioner's trial, and Mr. J. indicated that several more had been published within the two years preceding trial, those articles do not come close to the hostile and pervasive atmosphere that was present in *Irvin*.  *See Irvin*, 366 U.S. at 725; *see also Skilling*, 561 U.S. at 378–85.  Likewise, the county in which the jury tried Petitioner, Union County, New Jersey, with a population of over 500,000, is not the "small community" setting from which a "pattern of deep and bitter prejudice" took hold in *Irvin*.  *See Irvin*, 366 U.S. at 725, 727; *see also Skilling*, 561 U.S. at 378–85.  Finally, although the jurors convicted Petitioner of all the charges against him, unlike in *Irvin*, none of the

14

jurors who ultimately decided the matter indicated that they believed Petitioner was guilty prior to trial. *See Irvin*, 366 U.S. at 728; *see also Skilling*, 561 U.S. at 378–85.

Thus, Petitioner fails to demonstrate that the Appellate Division's decision was contrary to, or an unreasonable application of, *Irvin* or other related Supreme Court decisions. *See* 28 U.S.C. § 2254(d)(1). Accordingly, the Court denies Petitioner habeas relief on ground two.

## C.     Ground Three: Ineffective Assistance Claim (Failure to Present Witnesses)

In ground three, Petitioner alleges that his trial counsel provided ineffective assistance by failing to present testimony from two witnesses. (Am. Pet. at 9). According to Petitioner, witnesses J.B. and D.W. would have testified that Knighton possessed a handgun well before the robbery,[8] and because Knighton testified that Petitioner handed him the handgun just before

---

[8]     J.B. provided the following statement to police on October 13, 2006:

> Q. Did you see Mr. Knighton on July 3, 2006?
> A. Yes.
> . . .
> Q. Did you ever see Mr. Knighton with a gun before July 3, 2006?
> A. Yes.
> Q. Where did you see him with a gun?
> A. On my block.
> Q. Can you tell me where on your block?
> A. Exactly in front of my house. He was coming from out of Billy Walker's house and he was getting into a Blue Suburban truck.
> . . .
> Q. Do you know whose truck it was he was getting into?
> A. [Petitioner's.]
> Q. Did you see Mr. Knighton with a gun later that day?
> A. Yes.
> Q. When?
> A. He was coming out of Billy's house. He told me to come here and he gave me a handshake and a hug. He then said "Oh shit" and he said "look at your shirt." That is when I saw the blood on my shirt. I then took it off and threw it in a garbage in the side of my house.
> . . .
> Q. What did you do after you threw the shirt away?
> A. I went in the house and got another shirt. My mom saw me and told me to put a shirt on because of the mosquitoes. I then went back outside.
> Q. Did you see Maurice again that night?
> A. Yes, [h]e was in the middle of Ohio St. on the Union side sitting on someone's porch, 326 Ohio St.
> . . .
> Q. Did he have a gun with him at that time?

entering the victim's home, Petitioner contends the witnesses' testimony would have severely impeached Knighton's credibility.  (*Id.*).

The two-prong test set forth in the Supreme Court's opinion in *Strickland v. Washington* governs claims asserting ineffective assistance of counsel.  466 U.S. 668, 687 (1984).  To make out such a claim under *Strickland*, a petitioner must first show that "counsel's performance was deficient."  *Id.*  "To establish deficient performance, a person challenging a conviction must show that 'counsel's representation fell below an objective standard of reasonableness.'"  *Harrington v. Richter*, 562 U.S. 86, 104 (2011).  A petitioner must also show that counsel's allegedly deficient performance prejudiced his defense such that the petitioner was "deprive[d] of a fair trial . . . whose result is reliable."  *Strickland*, 466 U.S. at 687.  To establish prejudice, a petitioner "need not establish that the attorney's deficient performance more likely than not altered the outcome" of the petitioner's case, but only that there is a reasonable probability of such an effect upon the outcome

---

A.  Yes.
. . .
Q.  When did you last see him?
A.  After seeing him with the gun I went right home.

(D.E. No. 11-7 at 156–59, J.B. Statement to Police).

D.W. provided the following statement to police on July 6, 2006:

Q.  [C]an you tell us what you know about the, uh, homicide of Paul Capers, and, uh, what you told your mother, uh, in reference to Maurice Knighton?
A.  Um, he came on Harley Street one night and showed me thirty, well, uh, revolver.  I'm not sure if it was a thirty-eight or what, and, he asked me did he, do I have a sweet victim to get for him "cause he just got robbed or somethin' like that."
Q.  Do you remember what night that was?
A.  Uh, it was either two or three nights ago.
Q.  Okay.
A.  Or somethin' like that, and seen him, uh, the next day, he, um, he was, he looked high and he kept goin' into the crack house up, uh, across the street, uh, the Harley Street, comin' back for (inaudible) and I knew somethin' wasn't right, and I woke up next mornin', called my mother, asked my mother what happened . . . uh, no, I called my mother and then she told me what happened, and I told her I think I know who did it and, so . . . .

(D.E. No. 11-7 at 153–55, D.W. Statement to Police).

of the case.  *Nix v. Whiteside*, 475 U.S. 157, 175 (1986).

The Appellate Division considered this claim on PCR appeal and identified *Strickland* as the governing standard.  *See Prather*, 2018 WL 987864, at *3.  It concluded that the claims lacked sufficient merit to warrant discussion pursuant to N.J. Court Rule 2:11-3(e)(2).[9]  *Id.*  The Appellate Division also offered brief, additional explanation.  It noted that Petitioner failed to demonstrate deficient performance because the statements Petitioner contends his counsel should have introduced were, in fact, inculpatory.  *Id.* at *4.  For example, the Appellate Division stated that J.B.'s statement "placed an armed Knighton and [Petitioner] together in [Petitioner's] truck on the day of the murder."  *Id.*  Further, the Appellate Division noted that J.B.'s testimony would have been cumulative because J.B.'s mother testified at trial that she saw Knighton with a gun on the night of the murder getting into a car with Petitioner.  *Id.*  As to D.W.'s statement that he saw Knighton with a gun a few nights before July 6, 2006, the Appellate Division stated that the decision not to call D.W. as a witness fails to support any claim that counsel's performance was deficient.  *Id.*

The Court applies the AEDPA's standards to the Appellate Division's determination because the New Jersey Supreme Court summarily denied this claim on PCR appeal.  *See Simmons*, 590 F.3d at 231–32; *Prather*, 191 A.3d at 1276.  Petitioner argues that "[t]he Appellate Division's failure to arrive at that conclusion [that his counsel's performance was deficient and prejudicial] constituted an unreasonable application of *Strickland*" because "even if certain aspects of [J.B. and D.W.'s] testimony were harmful or cumulative, the positive aspects of such testimony would have greatly outweighed any potential negative aspects."  (*See* Reply at 32).

---

[9]     New Jersey Court Rule 2:11-3(e)(2) provides that "when in an appeal in a criminal . . . matter, the Appellate Division determines that some or all of the arguments made are without sufficient merit to warrant discussion in a written opinion, the court may affirm by specifying such arguments and quoting this rule and paragraph."

Petitioner's argument has no merit. "[T]he standard for judging counsel's representation is a most deferential one," even under *de novo* review. *Richter*, 562 U.S. at 105. Moreover, as the AEDPA applies, "[e]stablishing that a state court's application of *Strickland* was unreasonable under Section 2254(d) is all the more difficult." *Id.* "The standards created by *Strickland* and Section 2254(d) are both 'highly deferential,' and when the two apply in tandem, review is 'doubly' so." *Id.* Thus, under AEDPA, "the question is not whether counsel's actions were reasonable" but rather "whether there is any reasonable argument that counsel satisfied *Strickland*'s deferential standard." *Id.* In other words, the AEDPA prevents a federal court from granting habeas relief "simply because [the federal court] disagree[s] with the state court's decision or because [the federal court] would have reached a different result if left to [its] own devices." *Brown v. Wenerowicz*, 663 F.3d 619, 630 (3d Cir. 2011).

In essence, Petitioner asks this Court to do what the AEDPA prevents federal courts from doing: to reassess the reasonableness of counsel's performance and reach a different result than the state court. *See id.* This, the Court will not do. The Appellate Division set forth reasonable arguments that defense counsel satisfied *Strickland*'s deferential standard. *See Prather*, 2018 WL 987864, at *3. Accordingly, Petitioner fails to demonstrate that the Appellate Division's determination was contrary to, or an unreasonable application of, clearly established federal law, and the Court denies Petitioner relief on ground three.[10]

### D.  Ground Four: Ineffective Assistance Claim (Coercion not to Testify)

Finally, in ground four, Petitioner alleges that his trial counsel rendered ineffective assistance by providing deficient consultation and coercing him not to testify in his defense. (Am.

---

[10]     Even if this Court were to engage in a *de novo* review of Petitioner's claim, it would fail because Petitioner does not demonstrate deficient performance or prejudice. *Strickland*, 466 U.S. at 687. J.B.'s statement would have been harmful to the defense because Petitioner was charged with felony murder and the statement placed Petitioner around the time of the robbery with an armed Knighton, who admitted to planning and carrying out the robbery with Petitioner and accidentally shooting Paul Capers in the process. *See Prather*, 2018 WL 987864, at *4. "An attorney

Pet. at 11).  On this point, Petitioner contends that he "wanted to testify in his defense, as [he] had no criminal record and was capable of explaining and refuting the evidence against him."  (*Id.*).

As an initial matter, Respondent argues that Petitioner failed to exhaust this claim before the state courts.  (*See* Opp. at 22–23).  A federal court may not grant a writ under Section 2254 unless the petitioner has first "exhausted the remedies available in the courts of the State."  28 U.S.C. § 2254(b)(1)(A); *see also Rose v. Lundy*, 455 U.S. 509, 515 (1982); *Lambert v. Blackwell*, 134 F.3d 506, 513 (3d Cir. 1997), *cert. denied*, 532 U.S. 919 (2001).  To meet the exhaustion requirement, a petitioner must "fairly present" his federal claims to each level of the state courts empowered to hear them, either on direct appeal or in collateral post-conviction proceedings.  *See O'Sullivan v. Boerckel*, 526 U.S. 838, 847 (1999).  This means that the petitioner must "present a federal claim's factual and legal substance to the state courts in a manner that puts [the state courts] on notice that a federal claim is being asserted."  *McCandles v. Vaughn*, 172 F.3d 255, 261 (3d Cir. 1999).

Respondent maintains that Petitioner failed to exhaust ground four because he did not raise it in his Petition for Certification on PCR appeal.  (*See* Opp. at 22).  Petitioner counters that he did raise ground four in his petition for certification because the last sentence of his petition reads: "In further support of this Petition, Petitioner also respectfully relies upon all other arguments raised

---

need not pursue [evidence] that would be fruitless, much less [evidence] that might be harmful to the defense."  *See Richter*, 562 U.S. at 108.  Thus, it was reasonable for counsel not to pursue this evidence.

Moreover, J.B. and D.W.'s statements would have offered little, if any, impeachment value because they did not contradict Knighton's testimony, and, in any event, another witness provided similar testimony.  Petitioner claims that "the testimony of . . . [J.B.] and [D.W.] showed that [Knighton] lied about being handed the gun *for the first time* just before he entered Mr. Capers' bedroom window."  (*See* D.E. No. 11-7 ("PCR Appeal Br.") at 50 (emphasis added)).  However, Knighton never testified that was the first time he had the gun.  Rather, Knighton testified that he had seen the gun before, that he and Petitioner "had it before, years – couple years before," and that he had seen the gun before the murder "in our possession, [Petitioner's] and my possession."  (*See* D.E. No. 11-19, Oct. 28 Tr. Transcript at 79:22–80:9; D.E. No. 11-21, Oct. 29 Tr. Transcript at 63:14–20).  Moreover, as Petitioner concedes, R.B., J.B.'s mother, testified that she saw Knighton with a gun before the shooting away from the victim's house.  (*See* PCR Appeal Br. at 50).  Thus, Petitioner fails to demonstrate that counsel's failure to introduce the statements prejudiced his defense.

in the enclosed Appellate Division briefs and appendix."  (Reply at 36–37; D.E. No. 11-10, Br. in

Supp. of Pet. for Certification on PCR Appeal at 16).  The Court need not and does not decide

whether Petitioner's incorporation by reference is sufficient to put the state courts on notice of his

claim because, regardless, it fails under *de novo* review.

If appropriate, a habeas court can deny a petitioner's unexhausted claims on the merits

pursuant to 28 U.S.C. § 2254(b)(2).  *See Taylor v. Horn*, 504 F.3d 416, 427 (3d Cir. 2007).  Where

the state courts have not "reached the merits of a claim thereafter presented to a federal habeas

court," the federal court must "conduct a *de novo* review over pure legal questions and mixed

questions of law and facts . . . ."  *Id.* at 429.  Even on *de novo* review of a habeas claim, however,

the state court's factual determinations are still presumed to be correct, unless the petitioner rebuts

them with clear and convincing evidence.  *Appel v. Horn*, 250 F.3d 203, 210 (3d Cir. 2001) (citing

28 U.S.C. § 2254(e)(1)).

A defendant in a criminal trial has a constitutional right to testify at the trial.  *Rock v.

Arkansas*, 483 U.S. 44, 51 (1987); *United States v. Leggett*, 162 F.3d 237, 245 (1998).  This right

to testify "is personal and can be waived only by the defendant, not defense counsel," and if the

defendant chooses to waive this right, "the waiver must be knowing, voluntary and intelligent."

*Leggett*, 162 F.3d at 245.

As noted above, to prevail on his claim, Petitioner must demonstrate that his counsel's

performance was deficient and prejudicial to his defense.  *Strickland*, 466 U.S. at 687.  First,

Petitioner fails to demonstrate that his counsel's performance was deficient.  For example,

Petitioner fails to set forth any evidence that counsel coerced him into waiving his right to testify.[11]

---

[11]    Petitioner contends that he submitted an affidavit in support of this claim to the state courts (*see* PCR Appeal Br. at 41–42), but the affidavit is not evidence of coercion or deficient performance.  Petitioner's self-serving affidavit merely states: "I wanted to take the stand to testify on my own behalf.  I deemed it necessary that the jury heard my

Instead, the record suggests that Petitioner voluntarily waived his right to testify at trial. (*See* D.E. No. 11-30, Nov. 7 Tr. Transcript at 146:22–148:15).

Petitioner also asserts that his counsel "effectively forced [him] to waive that right by trial counsel's failure to prepare him" and that "[c]ounsel's lack of input undermined [Petitioner's] ability to make an informed decision on whether to testify." (*See* PCR Appeal Br. at 41). Once again, Petitioner offers no evidence in support, and his responses to the trial judge's questions regarding his right to testify suggest otherwise. (*See* Nov. 7 Tr. Transcript at 147:20–148:7).

Petitioner further asserts that counsel's advice not to testify was deficient because "[t]here was no tactical reason for [Petitioner] to forego his right to testify to refute the testimony of the State's witnesses" because "defendant had no prior conviction which could have been used to challenge [his credibility]." (*See* PCR Appeal Br. at 42). The Court disagrees that there was no sound, tactical reason for advising Petitioner not to testify. Although the prosecutor could not have impeached Petitioner on the basis of a prior criminal record, Petitioner still would have risked impeachment in other ways, *i.e.*, by inconsistent statements, if he took the stand. Thus, Petitioner fails to demonstrate that defense counsel rendered deficient performance by coercion or otherwise.

Second, Petitioner fails to demonstrate prejudice. On this point, Petitioner contends that he would have testified that "Knighton possessed the handgun" and that this testimony would have impeached Knighton and at least led to an acquittal on the weapon possession charges. (*See* PCR Appeal Br. at 43). Petitioner's argument is unconvincing, however, because his own cousin and father's testimony corroborated Knighton's account and suggested that Petitioner kept a handgun at his father's house, procured it from there, and handed it to Knighton as part of their plan to execute the robbery. *Prather*, 2013 WL 1942874, at *6–7. Accordingly, Petitioner fails to

---

version of events. The advice I received from counsel was not to testify and when asked by the judge, say that I elected not to testify." (D.E. No. 11-7 at 148, Prather Aff.).

demonstrate that there is a reasonable probability that his testimony would have altered the outcome of the case, *see Nix*, 475 U.S. at 175, and this Court denies him habeas relief on ground four.

## IV.    CERTIFICATE OF APPEALABILITY

Pursuant to 28 U.S.C. § 2253(c), a petitioner may not appeal from a final order in a habeas proceeding where that petitioner's detention arises out of a state court proceeding unless he has "made a substantial showing of the denial of a constitutional right." "A petitioner satisfies this standard by demonstrating that jurists of reason could disagree with the district court's resolution of his constitutional claims or that jurists could conclude that the issues presented here are adequate to deserve encouragement to proceed further." *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003). For the reasons expressed above, Petitioner's claims are all without merit and jurists of reason would not disagree with this Court's denial of Petitioner's habeas petition. Accordingly, Petitioner is denied a certificate of appealability.

## V.    CONCLUSION

For the reasons stated above, Petitioner's petition for a writ of habeas corpus is DENIED, and Petitioner is DENIED a certificate of appealability. An appropriate order follows.

Dated: May 24, 2022                                        s/*Esther Salas*_____
                                                                   **Esther Salas, U.S.D.J.**